```
                                                                    FILED
            IN THE UNITED STATES DISTRICT COURT                   MAR 2 9 2002
           FOR THE NORTHERN DISTRICT OF ALABAMA
                    NORTHEASTERN DIVISION                      UNITED STATES DISTRICT COURT
                                                               NORTHERN DISTRICT OF ALABAMA
```

|  |  |
|---|---|
| ITPE-NMU/MEBA PENSION FUND and ITPE-NMU/MEBA ANNUAL BENEFIT FUND and ITPE-NMU/MEBA HEALTH AND WELFARE FUND, | ) ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) CASE NO. CV 99-B-3085-NE |
| H & R SERVICES, INC., | ) ) |
| Defendant. | ) ) |

**ENTERED**

APR - 1 2002

### MEMORANDUM OPINION

Currently before the court is the Renewed Motion for Partial Summary Judgment and the Motion to Stirke or, in the Alternative, for Attorneys' Fees filed by plaintiff ITPE-NMU/MEBA Annual Benefit Fund ("Annual Benefit Fund").[1] Plaintiffs[2] commenced this action on November 18, 1999, alleging that defendant H & R Services, Inc. ("defendant" or "H & R Services") violated § 515 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1145 ("ERISA") and Section 301 of the Labor-Management Relations Act by failing to make contributions in accordance with applicable collective bargaining agreements with the Industrial, Technical and Professional Employees Union, AFL-CIO ("the Union"). Upon consideration of the record, the submissions of the parties, the arguments of counsel and the relevant law, the court is of the opinion that the Annual Benefit Fund's Motion to Strike and Renewed Motion for

---

[1] Plaintiffs originally filed a Motion for Summary Judgment on April 11, 2000, which the court denied with regard to the Annual Benefit Fund on March 31, 2001.

[2] This action was filed by plaintiffs ITPE-NMU/MEBA Pension Fund, ITPE-NMU/MEBA Annual Benefit Fund, and ITPE-NMU/MEBA Health and Welfare Fund. Collectively, these entities will be referred to throughout this Memorandum Opinion as "plaintiffs."



Partial Summary Judgment are due to be granted.

## I. FACTUAL SUMMARY

The Annual Benefit Fund provides vacation, holiday, sick leave, and other benefits for employees of contributing employers. (PX I, 10 at ¶ 6.)[3] Section 7.01 of the Agreement and Declaration of Trust establishing the Annual Benefit Fund provides that all contributions shall be submitted to the Trustees of the said Fund by no later than fifteen days following the month for which contributions are due. (PX I, 11 at 18.) In addition, Section 7.02 (c) of the Agreement and Declaration of Trust establishing the Annual Benefit Fund provides that if payment is not received from an employer within ten days following the due date, liquidated damages shall be imposed on such employer at the rate of twenty percent of the amount of unpaid contributions. (*Id.* at 19.) These sections also provide for the imposition of interest on the amount due and owing from such delinquent employer at the rate of one and a half percent per month. (*Id.*)

On October 19, 1994, defendant entered into a collective bargaining agreement with the Union which required defendant to make contributions to the Annual Benefit Fund for covered services employees at Barbers Point at contractually specified rates. (PX V, 1 at ¶ 3 and Ex. A

---

[3] Plaintiffs filed an Evidentiary Submission in Support of Plaintiffs' Motion for Summary Judgment on April 11, 2000, which will be referred to throughout this Memorandum Opinion as "PX I" followed by a comma and the corresponding tab number. On April 2, 2001, the Annual Benefit Fund filed a Fifth Evidentiary Submission in Support of Plaintiff ITPE Annual Benefit Fund's Renewed Motion for Partial Summary Judgment, which will be referred to as "PX V," followed by the corresponding tab number. On May 4, 2001, the Annual Benefit Fund filed a Sixth Evidentiary Submission in Support of Plaintiff ITPE Annual Benefit Fund's Renewed Motion for Partial Summary Judgment, which will be referred to as "PX VI," followed by the corresponding tab number.
Defendant filed an Evidentiary Submission in Opposition to Plaintiffs' Motion for Summary Judgment on May 12, 2000, which will be referred to throughout this Memorandum Opinion as "DX" followed by the corresponding tab letter.

2

attached thereto.) Subsequently, on April 17, 1996, defendant and the Union entered into a written supplemental agreement which reaffirmed defendant's duty to make contributions to the Annual Benefit Fund and changed the rate of contributions. (*Id.*) On August 8, 1998, the Union and defendant executed an addendum to the existing agreement. (*Id.* at ¶ 3 and Ex. B attached thereto.) The signed addendum provided by the Annual Benefit Fund includes an obligation by defendant to continue making contributions to the Annual Benefit Fund. (*Id.*) Defendant's agreement with the Union for service employees at Barbers Point expired at the end of March 1999. (*Id.* at ¶ 3.)

Defendant ceased making contributions to the Annual Benefit Fund at the end of March 1998. (PX V, 2 at 11.) Roger Hall ("Hall"), defendant's General Manager, testified that the reason defendant quit making these contributions was that the obligation was negotiated out of the agreement with the Union. (*Id.* at 11-12.) Specifically, Hall alleges that when he signed the August 1998 addendum, he marked through the portion dealing with the obligation to make payments to the Annual Benefit Fund. (*Id.* at 12-18.) The Annual Benefit Fund contends that the contributions should have continued through the end of March 1999, pursuant to the written agreement between the parties. (*See* Brief in Support of Plaintiff ITPE Annual Benefit Fund's Renewed Motion for Partial Summary Judgment ("Annual Benefit Fund's Br.") at 7-9.)

Hall also stated that he contacted several union representatives about the Annual Benefit Fund. (PX V, 2 at 13.) Hall specifically stated that he spoke to John Brenton ("Brenton"), the union representative for Barbers Point, about the Barbers Point agreement. (*Id.* at 14-15.) Hall testified that he told Brenton that he intended to remove H & R Services' obligation to the Annual Benefit Fund from the addendum. (*Id.*) However, Hall conceded that Brenton never

3

agreed to such a removal. (*Id.*) Hall also stated that he spoke with Union President John Conley ("Conley") and told him that he wanted to remove the Annual Benefit Fund from his agreements at the various military installations. (*Id.* at 18-19.) According to Hall, Conley stated that he had no objection. (*Id.*) Hall also stated that he spoke with Union representative Dennis Arrington ("Arrington"). (*Id.* at 21-22.) According to Hall, when he told Arrington that he did not want the Annual Benefit Fund in any of the contracts, Arrington said "that's a good idea." (*Id.* at 22.) Hall further stated that when he told union representative Mary Williams ("Williams") that he wanted to remove the Annual Benefit Fund from all of the agreements, she stated that she did not blame him. (*Id.* at 20.) However, Hall did not reveal the name of any representative of the union with which he executed an agreement to remove the obligations to the Annual Benefit Fund from the Barbers Point agreement.

Further, Hall stated that he spoke with Union attorney Stanley Gruber ("Gruber") regarding the Annual Benefit Fund. (PX V, 2 at 23-28.) In that conversation, Gruber told Hall that his understanding from Brenton was that defendant was obligated to make payments to the Annual Benefit Fund. (*Id.*) On August 25, 1998, Gruber sent a letter to Hall concerning his failure to make payments to the Annual Benefit Fund. (*Id.* at 28-30 and Ex. 2 attached thereto.) In that letter Gruber wrote, "It is my understanding that your position regarding contributions to the Annual Benefit Fund for Barbers Point is that you negotiated that obligation out of the collective bargaining agreement, and accordingly, will be paying vacation, holiday, etc. benefits directly to your employees at that facility." (*Id.* at Ex. 2.)

Defendant contends that it made payments directly to the employees for sick, vacation, and holiday pay for the covered employees from April 1998, through March 1999, totaling

4

$16,847.04. (DX at ¶ 16 and Ex. D attached thereto.) Defendant also claims that the Department of Labor investigated the alleged failure to make these payments and concluded that defendant had paid the employees all that they were owed. (*Id.*) However, the Union disputes that these payments have been made. (*See* PX V, 1 at ¶ 5.)

Upon filing its original Motion for Summary Judgment on April 12, 2000, the Annual Benefit Fund also filed an Evidentiary Submission which included a copy of an addendum to the Barbers Point agreement, dated August 8, 1998. (*See* PX I, 12.) This addendum specifically included a continuance of defendant's duty to make contributions to the Annual Benefit Fund and did not contain any deletions of defendant's obligation to the Annual Benefit Fund. (*Id.*) In its response to the initial Motion for Summary Judgment, defendant stated that it made the contributions directly to the employees. (DX at ¶ 16.) However, defendant did not dispute the validity of the addendum provided by the Annual Benefit Fund. (*See id.*)

Moreover, on February 2, 2000, plaintiffs served H & R Services with a request for production of documents, which included the following request:

> 1. All documents which relate or in any way pertain to any contention by the Defendant that it does not owe contributions to the ITPE-NMU/MEBA Annual Benefit Fund pursuant to Defendant's collective bargaining agreement and Declarations of Trust with ITPE-NMU/MEBA, AFL-CIO (hereinafter referred to as "ITPE") covering service employees at Barbers Point for the months of April, 1998 through March, 1999, or that it has already paid such contributions, or any other defense Defendant may have regarding its failure to make these contributions, including but not limited to any documents which relate or in any way pertain to any denial made in Plaintiff's Request for Admission no.1.

(*See* PX VI, 1 at 4.) In this request for production, defendant was reminded that it was "under a duty to supplement [its] responses imposed by Federal Rule of Civil Procedure 26." (*Id.* at 2, ¶

D.) Although defendant provided documents in response to the request for production, it did not provide a version of the August 1998 addendum in conflict with that submitted by the Annual Benefit Fund.

On January 16, 2001, and again on February 2, 2001, plaintiffs served defendant Rule 30(b) deposition notices and accompanying requests for production of documents, including requests for:

> 1.   All documents relating or pertaining to the facts, matters and events referred to in the Complaint in this case regarding the ITPE Annual Benefit Fund ("Annual Benefit Fund") and the averments and affirmative defenses in Defendant's Answer regarding the Annual Benefit Fund.
>
> . . .
>
> 7.   All documents relating or pertaining to reasons why Defendant allegedly paid amounts directly to employees at Barbers Point, Hawaii, that were due to be paid to the Annual Benefit Fund.
>
> 8.   All documents relating or pertaining to Defendant's failure to make contributions to the Annual Benefit Fund for its employees at Barbers Point, Hawaii from April 1998 through March 1999.

(PX VI, 3 at Ex. A attached thereto; *see also* PX VI, 2.) Although defendant provided documents in response to this request, it did not provide a version of the August 1998 addendum in conflict with that submitted by the Annual Benefit Fund. Plaintiffs conducted the deposition of defendant's corporate representative without the benefit of this version of the addendum.

On April 23, 2001, defendant filed Defendant's Response in Opposition to Plaintiff ITPE Annual Benefit Fund's Renewed Motion for Partial Summary Judgment, with the Affidavit of Roger Hall attached thereto. Defendant attached to Hall's Affidavit a version of the August 1998 addendum in which the obligation to the Annual Benefit Fund was crossed out. (*See* Defendant's

6

Response in Opposition to Plaintiff ITPE Annual Benefit Fund's Renewed Motion for Partial Summary Judgment ("Def.'s Br.") at Tab 1, Ex. A.) Defendant had never before produced this document to the Annual Benefit Fund or submitted it to the court. Further, defendant offered only the following explanation for its failure to produce the document earlier in the litigation: "This document was stored among some old business records located in a rental unit in Huntsville, Alabama. We asked Gail Crouch, a payroll clerk, to specifically look for the document and she found it." (Def.'s Br., Tab 1 at ¶ 3.)

From April through September of 1998, defendant's Barbers Point employees worked 9,825.25 hours. (PX V, 1 at ¶ 4; *see also* PX V, 2 at Exs. 23-29 attached thereto.) The collective bargaining agreement required a contribution of $2.22 per hour worked by each employee during those months. (PX V, 1 at ¶ 4; PX V, 2 at Ex 1 attached thereto.) Thus, the total amount allegedly due to the Annual Benefit Fund for April 1998, through September 1998, is $21,812.06. (PX V, 1 at ¶ 4.) Additionally, defendant's Barbers Point employees worked 10,716.10 hours from October 1998, through March 1999. (*Id.*) The collective bargaining agreement required a contribution of $2.32 per hour worked by each employee during those months. (PX V, 1 at ¶ 4; PX V, 2 at Ex. 1 attached thereto.) Thus, the total amount allegedly due to the Annual Benefit Fund for October 1998, through March 1999, is $24,861.35. (PX V, 1 at ¶ 4.) Therefore, the total amount allegedly due to the Annual Benefit Fund for April 1998, through March 1999, is $46,673.41. (*Id.*)

Defendant contends that it has paid $16,847.04 directly to the employees. The total amount which the Annual Benefit Fund contends is due, not including the $16,847.04, but

including liquidated damages[4] and interest,[5] is $46,353.45. (*Id.*) Although defendant contests its liability, defendant has not contested the accuracy of these calculations.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmovant party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and the admissions on file,' designate 'specific facts showing there is a genuine issue for trial, . . .'" *Celotex*, 477 U.S. at 324. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

---

[4] Under the Agreement and Declaration of Trust, the Annual Benefit Fund is entitled to liquidated damages. (PX I, 11 at 19; *see also* PX V, 1 at ¶ 6.) The Annual Benefit Fund contends that it is due $5,967.27, which is twenty percent of $29,83637, in liquidated damages. (*See* PX V, 1 at ¶ 6.)

[5] Under the Agreement and Declaration of Trust, the Annual Benefit Fund is entitled to interest on the amount of contributions it is owed. (PX I, 11 at 19; *see also* PX V, 1 at ¶ 6.) The Annual Benefit Fund contends that interest payments in the amount of one and a half percent per month on $29,836.37, calculated from April 15, 1999, the date that defendant's final payment to the Annual Benefit Fund was due, through April 2, 2001, total $10,549.81. (*See* PX V, 1 at ¶ 6.)

8

of proof at trial." *Celotex*, 477 U.S. at 322.

### III. DISCUSSION OF LAW

The court has jurisdiction over this action pursuant to Section 301 of the Labor-Management Relations Act and Section 502 of ERISA. Section 301(a) of the Labor-Management Relations Act provides a federal forum for suits to enforce labor contracts, including pension and welfare agreements. *See Korzen v. Local Union 705*, 75 F.3d 285, 288 (7th Cir. 1996) ("Section 301 confers jurisdiction to hear a suit from breach of contract between an employer and a labor organization"); *see also United Automobile, Aerospace & Agricultural Implement Workers of America, Local 133 v. R.E. Dietz Co., Co.*, 996 F.2d 592, 595 (2d Cir. 1993) ("Section 301 covers suits for violations of contracts between an employer and a labor organization."). Because the Annual Benefit Fund alleges that defendant breached the collective bargaining agreements, the Labor-Management Relations Act provides the Annual Benefit Fund with a federal forum to remedy any violations of the aforementioned agreements. *See Central States, Southeast and Southwest Areas Pension Fend v. Behnke, Inc.*, 883 F.2d 454, 464 (6th Cir. 1989) (In action brought, in part, under the Labor Management Relations Act, defendant employer was held "liable for its delinquent contributions.").

Defendant acts "directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan," so it is an "employer" within the meaning of Section 3(5) of ERISA. 29 U.S.C. § 1002(5). Moreover, because defendant is involved in "any activity, business or industry in commerce or in which a labor dispute would hinder or obstruct commerce," it is engaged in an "industry or activity affecting commerce" within the meaning of Section 3(12) of ERISA. *See* 29 U.S.C. § 1002(12).

9

As defined by ERISA, an "employee welfare benefit plan" is any "plan, fund or program . . . maintained by an employer or by an employee organization . . . for the purposes of providing for its participants or their beneficiaries . . . (A) medical, surgical, or hospital care or benefits in the event of sickness accident disability, death or unemployment, or vacation benefits." 29 U.S.C. § 1002(1). The Annual Benefit Fund provides vacation, holiday, sick leave, and other benefits for employees of contributing employers. (PX I, 10 at ¶ 6.) Thus, the Annual Benefit Fund is an "employee welfare benefit plan" within the meaning of Section 3(l) of ERISA. *See* 29 U.S.C. § 1002(l).

As defined by ERISA, a multi-employer plan is a plan "(i) to which more than one employer is required to contribute, (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and (iii) which satisfies such other requirements as the Secretary may prescribe by regulation." 29 U.S.C. § 1002(37)(a). There are approximately twenty-six employers which contribute to the Annual Benefit Fund. (PX I, 10 at ¶ 6.) Thus, the Annual Benefit Fund is a "multi-employer plan" within the meaning of ERISA. *See* 29 U.S.C. § 1002(37)(a).

The failure of an employer to make its required contributions and abide by the terms of its agreements with a multi-employer plan is a violation of Section 515 of ERISA. *See* 29 U.S.C. § 1145 ("Every employer who is obliged to make contributions to a multiemployer plan under the terms . . . of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such . . . agreement."). In the event that an employer fails to make contributions in accordance with the terms and conditions of such agreement, a multi-employer plan is entitled to damages and equitable relief as follows:

10

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–
> 
>     (A)    the unpaid contributions,
>     (B)    interest on the unpaid contributions,
>     (C)    an amount equal to the greater of–
>         (i)    interest on unpaid contributions, or
>         (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A).
>     (D)    reasonable attorney's fees and costs of the action to be paid by the defendant, and
>     (E)    such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

### A.    Motion to Strike or in the Alternative for Attorneys' Fees

The Annual Benefit Fund moves to exclude the addendum attached to Roger Hall's April 23, 2001, affidavit pursuant to Rule 37 of the Federal Rules of Civil Procedure. Rule 37(c)(1) states as follows:

> <u>A party that without substantial justification fails</u> to disclose information required by Rule 26(a) or 26(e)(1), or <u>to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence</u> at trial, at a hearing, or<u> on a motion any witness or information not so disclosed.</u> In addition to or in lieu of this sanction, the court, on motion after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A),(B),and (C) and may include informing the jury of the failure to make the disclosure.

FED. R. CIV. P. 37(c)(1) (emphasis added).

On December 12, 1999, plaintiffs served defendant with the Complaint in this case, which included a claim by the Annual Benefit Fund for failure to make contributions for service

11

employees at Barbers Point, Hawaii from April 1998, through March 1999. (*See* Compl. ¶ 13.) The Complaint should have put defendant on notice that the terms of the addendum, which covered this time period, were at issue.

On February 2, 2000, plaintiffs served defendant with a request for production of documents, which included a request for all documents which pertain or relate to any contention by defendant that it does not owe contributions for covered service employees at Barbers Point, Hawaii for the months of April 1998, through March 1999. (*See* PX VI, 1.) Plaintiffs also reminded defendant that Federal Rule of Civil Procedure 26 imposed on defendant a duty to supplement its discovery responses. (*Id.*) Although defendant provided documents in response to the request for production, it did not provide the August 1998 version of the addendum at issue. It should have been obvious to defendant that the August 1998 addendum would be of utmost importance in this case.

On April 11, 2000, plaintiffs moved for summary judgment on all issues in the Complaint. The Evidentiary Submission filed contemporaneously with plaintiff's original Motion for Summary Judgment on April 11, 2000, did not contain a version of the addendum in which defendant's obligation to the Annual Benefit Fund was crossed out. (*See* PX I, 12.) Obviously, the importance of defendant's version of this addendum should have been readily apparent at that time. Nevertheless, defendant's response to this Motion included a brief and an evidentiary submission, neither of which even mentioned the fact that such an alternative version of the August 1998 addendum existed. Rather, defendant's only response to the Motion was that it had paid the disputed contributions directly to the employees, and that the Department of Labor had investigated this issue. (*See* Defendant's Response to Plaintiffs' Motion for Summary

12

Judgment at 8-10.) Finding a genuine issue of material fact, the court denied the original Motion for Summary Judgment with regard to the Annual Benefit Fund.

On January 16, 2001, and again on February 2, 2001, plaintiffs served defendant with Rule 30(b) deposition notices and accompanying requests for production of documents, including requests for all documents relating to the Annual Benefit Fund's Complaint and defendant's corresponding Answer, all documents relating to the reasons why defendant paid the employees directly, and all documents relating to defendant's failure to make contributions to the Annual Benefit Fund for covered service employees at Barbers Point, Hawaii, for the months of April 1998, through March 1999. (PX VI, 3 at Ex. A attached thereto; PX VI, 2.) Clearly, a proper response to these requests would have included the August 1998 version of the addendum now at issue. Although defendant provided documents in response to this request, it did not provide the version of the addendum purporting to relieve defendant of its obligation to the Annual Benefit Fund.

Plaintiffs conducted Hall's deposition without the benefit of defendant's version of the addendum. Hall testified that he had marked through the addendum and that he was not sure if the document was in the possession of defendant. (PX V, 2 at 11-31.) Thus, from Hall's deposition testimony, it is apparent that Hall knew of the existence of this document during the entirety of the litigation.

On April 2, 2001, two months after the deposition, the Annual Benefit Fund filed a Renewed Motion for Summary Judgment, again without the benefit of having defendant's version of the August 1998 addendum. On April 23, 2001, in its response to the Renewed Motion for Summary Judgment, defendant for the first time produced a version of the August

13

1998 addendum with the obligation to the Annual Benefit Fund crossed out. (*See* Def.'s Br. at Tab 1 and Ex A. attached thereto.) The production of this document came fourteen months after the initial request for production, over a year after the initial Motion for Summary Judgment, and three months after the Rule 30(b) request for documents. Despite the fact that it was using a document which it failed to produce or to supplement as required by Rule 26, defendant failed to provide any explanation as to why it did not produce the document at an earlier time. The Affidavit of Roger Hall, to which defendant's version of the August 1998 addendum is attached, merely states that "this document was stored among some old business records located in a rental unit in Huntsville, Alabama. We asked Gail Crouch, a payroll clerk, to specifically look for the document and she found it." (Def.'s Br. at Tab 1.) Defendant made no other effort to explain why this document was not produced in accordance with Rule 26.

     Federal Rule of Civil Procedure 37(c) provides that information or documents which a party fails to produce pursuant to Rule 26(a) or Rule 26(e)(1) may not be used as evidence on a motion unless that party provides the court with a "substantial justification." *See* FED. R. CIV. P. 37(c)(1). Not only has defendant failed to provide substantial justification, it has not provided *any* justification at all for not producing the document. Further, not only did defendant fail to produce the document, but it also failed to even disclose the existence of the document until almost a year after the initial request for production. The Annual Benefit Fund has been prejudiced by defendant's failure to produce the document in that it expended the time and effort of filing two motions for summary judgment and taking defendant's 30(b)(6) deposition without the benefit of defendant's version of the August 1998 addendum.

     Most disturbing is the fact that the August 1998 addendum is obviously a very important

14

document in the litigation between defendant and the Annual Benefit Fund. It is clear from Hall's deposition that he knew of the existence of the document throughout the entirety of the litigation. Moreover, defendant had over a year between the initial request for production and the Renewed Motion for Partial Summary Judgment to produce it. Even assuming the document was stored among documents in Huntsville, Alabama, defendant had a duty pursuant to Rule 26 to look for this document and supplement its discovery responses. According to Hall's affidavit, once Gail Crouch was asked to specifically look for the document, she found it. (*See* Def.'s Br. at Tab 1.) Obviously, considering the numerous discovery requests, Hall's knowledge of the existence of the document, and the importance of the addendum, Crouch should have been asked to look for it much sooner.

Accordingly, consistent with Rule 26, Rule 37, and the interest of fairness, the August 1998 version of the addendum attached to the Affidavit of Roger Hall, filed on April 23, 2001, is due to be stricken from the record.

### B. Renewed Motion for Partial Summary Judgment

The only other evidence which defendant offers in opposition to the Renewed Motion for Partial Summary Judgment is Hall's deposition testimony and the August 25, 1998, letter from Gruber concerning defendant's failure to make payments to the Annual Benefit Fund. This evidence does not create a genuine issue of material fact.

Hall testified that he marked through the portion of the August 1998 addendum dealing with the Annual Benefit Fund. (PX V, 2 at 11-18.) However, the signed addendum before the court does not contain such a deletion. (*See* PX I, 12.) Because there is an unambiguous written contract covering the contributions at issue, all parol evidence concerning those contracts is

inadmissible. *See, e.g., Moore v. Pennsylvania Castle Energy Corp.,* 89 F.3d 791, 795 (11th Cir. 1996) ("In the absence of fraud, mistake, or illegality, parol evidence is not admissible to explain, contradict, vary, add to, or subtract from the express terms of a complete and unambiguous written agreement."); *Lassiter v. Alabama A&M University Board of Trustees,* 28 F.3d 1146, 1159 (11th Cir. 1994) ("In an unambiguous contract the words of the agreement alone control its interpretation. In such cases, contractual rights are interpreted by the court based on written words of the agreement. Parol evidence usually is inadmissable.") Accordingly, Hall's testimony regarding his actions in negotiating the addendum is inadmissible.

Even if the court considered the testimony, such testimony does not create a genuine issue of material fact, given the existence of a signed agreement which obligates defendant to make the contributions at issue. Hall also stated that he contacted several union representatives about the Annual Benefit Fund. (PX V, 2 at 13.) He stated that he spoke to Brenton, the union representative for Barbers Point, about the Barbers Point agreement. (*Id.* at 14-15.) Hall testified that he told Brenton that he intended to remove defendant's obligation to the Annual Benefit Fund from the addendum. (*Id.*) However, Hall conceded that Brenton never agreed to such a removal. (*Id.*) Hall also stated that he spoke with Conley, the Union President, and told him that he wanted to remove the Annual Benefit Fund from his agreements at the various military installations. (*Id.* at 18-19.) According to Hall, Conley stated that he had no objection. (*Id.*) Hall also stated that he spoke with Arrington, a Union representative. (*Id.* at 21-22.) When Hall told Arrington that he did not want the Annual Benefit Fund in any of the contracts, Arrington allegedly said, "that's a good idea." (*Id.* at 22.) Additionally, Hall alleges that when he told Williams that he wanted to remove the Annual Benefit Fund from all of the agreements, she

16

stated that she did not blame him. (*Id.* at 20.) However, Hall did not reveal the name of any representative of the union with whom he executed an agreement to remove the obligations to the Annual Benefit Fund from the Barbers Point agreement. Defendant could not have unilaterally removed the Annual Benefit Fund from the agreement; instead, defendant had to have negotiated the terms of its removal. Yet, there is no evidence that any such negotiations or agreement took place. Accordingly, defendant has not established that it reached an agreement to remove the Annual Benefit Fund from the Barbers Point agreement.

Even assuming that any of these conversations amounted to an agreement to remove the Annual Benefit Fund from the Barbers Point agreement, summary judgment would still be appropriate. ERISA expressly requires that employee benefit plans be "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). The Eleventh Circuit has therefore held that the "requirement that ERISA plans be 'maintained' in writing precludes oral modifications of the Plans; the common law doctrine of estoppel cannot be used to alter this result." *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986). Moreover, the Labor Management Relations Act's (LMRA) requirement that the terms of a welfare trust be set forth in writing also precludes oral modification of the agreement. *See, e.g., Northwest Administrators, Inc. v. Sacramento Stucco*, 86 F. Supp. 2d 974, 980 (N.D. Cal. 2000) ("Section 302(c)(5) of the LMRA requires that payments from an employer to an employee benefit trust fund be made according to a written agreement setting forth the detailed basis on which such payments are to be made. An employer and union, therefore, cannot orally modify the terms of employee benefit provisions of a collective bargaining agreement.").

Because oral modifications of this plan are not permitted by either ERISA or the

17

LMRA, any oral agreement between Hall and a Union official to discontinue the Annual Benefit Fund altogether is precluded, and the terms of the written agreement remain in force until such terms are altered by a written agreement. The only written agreements before the court are the 1996 supplemental agreement and the 1998 addendum, both of which clearly establish defendant's obligation to make payments to the Annual Benefit Fund during the time in question.

Defendant further argues that "the union's attorney, Stanley Gruber, acknowledged that H & R [Services] was permitted to make such payments directly to the employees in a correspondence dated August 25, 1998." (Def.'s Br. at 6.) However, the letter indicates that Gruber merely acknowledged that defendant's *position* was that it negotiated the Annual Benefit Fund out of the collective bargaining agreement and that it was paying such benefits directly to the employees. (*See* PX V, 2 at Ex. 2.) Nowhere did Gruber say that such conduct was permissible under the contract or state that he agreed with defendant's position. (*See id.*) Moreover, Hall admitted that Gruber told him in a phone conversation that he was supposed to be making contributions to the Annual Benefit Fund. (*See* PX V, 2 at 23-28.) Thus, defendant's argument in this regard is without merit.

There being no genuine issue of material fact, the Renewed Motion for Partial Summary Judgment is due to be granted, and judgment in the amount of $46,353.45 is due to be entered against defendant and in favor of the Annual Benefit Fund.

### C. Attorneys' Fees and Costs

29 U.S.C. § 1132(g)(2) mandates that reasonable attorneys' fees "shall" be awarded upon entry of judgment against a defendant. In the Complaint, the Annual Benefit Fund sought attorneys' fees and costs. Defendant has not asserted any reason why it should not be required to

18

pay reasonable attorneys' fees and costs. Therefore, the court is of the opinion that because the court is granting summary judgment in favor of the Annual Benefit Fund, it is also entitled to payment of reasonable attorney's fees and costs of the action by defendant under 29 U.S.C. § 1132(g)(2).

### IV. CONCLUSION

Defendant's version of the 1998 addendum, attached to the Affidavit of Roger Hall and submitted in response to the Annual Benefit Fund's Renewed Motion for Partial Summary Judgment, is due to be stricken from the record due to defendant's failure to produce the document or supplement its discovery responses as required by Federal Rules of Civil Procedure 26 and 37.

Defendant has failed to raise a genuine issue of material fact regarding the claims made in the Annual Benefit Fund's Renewed Motion for Partial Summary Judgment. Accordingly, partial summary judgment is due to be granted in favor of the Annual Benefit Fund and against defendant in the amount of $46,353.45. Additionally, the Annual Benefit Fund is entitled to reasonable attorneys' fees and costs for successfully pursuing this Motion.

An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 29th day of March, 2002.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge